UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATONNE A. SINGLETON, | ) Civil No. 06cv1392-IEG (BLM) |
| Petitioner, | ) **REPORT AND RECOMMENDATION FOR**<br>) **ORDER DENYING RESPONDENT'S** |
| v. | ) **MOTION TO DISMISS PETITION FOR**<br>) **WRIT OF HABEAS CORPUS** |
| L.E. SCRIBNER, Warden, | ) |
| | ) **[DOC. NO. 13]** |
| Respondent. | ) |

This Report and Recommendation is submitted to United States District Judge Irma E. Gonzalez pursuant to 28 U.S.C. § 636(b) and Local Civil Rules 72.1(d) and HC.2 of the United States District Court for the Southern District of California.

On July 3, 2006[1], Petitioner Latonne A. Singleton, a state

---

[1] In determining the filing date of his petitions, Petitioner is entitled to the benefit of the "mailbox rule," which is the date the petitions were presented to prison authorities for mailing to the court. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that petitioner's notice of appeal is deemed "filed at the time [he] deliver[s] it to the prison authorities for forwarding to the court clerk"); Huizar v. Carey, 273 F.3d 1220, 1223 (9th Cir. 2001) (recognizing the application of Houston's mailbox rule to federal habeas filings); see also Stillman v. LaMarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (recognizing same with regard to state habeas petitions). Here, the verification and declaration accompanying Petitioner's federal habeas petition bear the

1  prisoner appearing *pro se*, filed the Petition for Writ of Habeas
2  Corpus currently before the Court.  Doc. No. 1.  In his Petition,
3  Petitioner alleges four grounds for relief, all of which relate to
4  the jury's failure to make a great bodily injury finding in relation
5  to his conviction for torture.  Id.

6      This Court has considered the Petition ("Pet."), Respondent's
7  Motion to Dismiss and accompanying memorandum ("Resp't Mem."),
8  Petitioner's "Response to Motion to Dismiss Petition for Writ of
9  Habeas Corpus" ("Pet'r Resp."), and all supporting documents
10 submitted by the parties.  For the reasons set forth below, this
11 Court **RECOMMENDS** that Respondent's Motion to Dismiss Petition for
12 Writ of Habeas Corpus [Doc. No. 13] be **DENIED**.

13     **BACKGROUND**

14     In a first amended information filed on or about December 9,
15 1999, Petitioner was charged with eighteen criminal counts
16 pertaining to two victims, which included charges of cohabitant
17 abuse, forcible rape, sodomy, assault with a deadly weapon, making
18 an unlawful threat, possession of a firearm by a felon, and torture.
19 Pet. at 17-19.[2]  A jury convicted Petitioner of seven counts of
20 cohabitant abuse in violation of California Penal Code ("Penal
21 Code") § 273.5(a) and one count of assault in violation of Penal
22 Code § 240.  Lodgment 1 at 1.  It acquitted him of one count of
23 forcible sodomy (Penal Code § 286(c)(2)), one count of forcible rape

---

handwritten date of July 3, 2006.  Lodgment 1.  Accordingly, this Court will construe Petitioner's federal habeas petition as having been filed on July 3, 2006.  Id.

[2]  The procedural record lodged by Respondent, which includes the Court of Appeal's denial of Petitioner's direct appeal, contains minimal information on the dates and charges in this case.  Accordingly, the Court cites to the Petition for purposes of providing background information.

(Penal Code §261(a)(2)), and one count of assault with a deadly weapon or force likely to produce great bodily injury (Penal Code § 245(a)(1)).  Id. at 1-2.  The jury was unable to reach a verdict on the remaining charges.  Id. at 2.  Petitioner admitted serving one prior prison term within the meaning of Penal Code § 667.5(b).  Id.

The district attorney elected to retry Petitioner on four of the unresolved counts.  Pet. at 20; Resp't Mem. at 2; Lodgment 1 at 2.  Following a second jury trial, Petitioner was convicted of torture (Penal Code § 206) while armed with and personally using a deadly or dangerous weapon (a broom handle) (Penal Code §§ 12022(a)(1) and (b)(1) and 12022.5(a)), forcible rape (Penal Code § 261(a)(2)), forcible sodomy (Penal Code § 286(c)(2)), and being a felon in possession of a firearm (12021(a)(1)).  Lodgment 1 at 2.  The trial court denied Petitioner's subsequent motion for a new trial and sentenced him to life in prison with the possibility of parole based on the torture count.  Id.  In addition, the trial court added a determinate sentence of eight years and eight months based on the three year middle term for inflicting injury on a cohabitant, a three year enhancement for firearm use, a one year term for a second conviction of inflicting corporal injury on a cohabitant (one-third of the middle term), eight months for being a felon in possession of a firearm (one-third of the middle term), and a one year enhancement for the prior prison term.  Id. Finally, the trial court imposed a concurrent term for the assault conviction and stayed the sentences for the five remaining convictions.  Id.
///
///
///

### A. Direct Appeal

In response to Petitioner's direct appeal, the California Court of Appeal affirmed the judgment but reversed the torture conviction and firearm-use enhancement to that conviction. Id. On remand, the trial court dismissed the torture count and sentenced Petitioner to an aggregate term of twenty-three years in prison. Id.

Petitioner appealed again, this time asking the Court of Appeal to review the record for error pursuant to People v. Wende, 25 Cal. 3d 436 (1979). Id. at 3-4. Specifically, Petitioner argued that the trial court erred by increasing the determinate term after the life-indeterminate term was reversed and the charge underlying the indeterminate term was dismissed. Id. at 4. Finding that Petitioner had failed to raise a reasonably arguable appellate issue, the Court of Appeal affirmed the judgment. Id.

Petitioner filed a petition for discretionary review in the California Supreme Court, which that court summarily denied without citation on May 12, 2004. Lodgments 2 and 3. Petitioner did not file a petition for writ of certiorari in the United States Supreme Court. Pet. at 4.

### B. State Habeas Review

On September 7, 2004[3], Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. Lodgment 4. Petitioner raised six claims, four of which are nearly identical to the claims asserted in his federal petition. Id. The Supreme Court summarily denied his petition without citation on July 27, 2005.

---

[3] Again, Petitioner is entitled to the benefit of Houston's mailbox rule to determine the filing date of his original state habeas petition. See supra text accompanying note 1.

Lodgment 5.

### C. Federal Habeas Review

On July 3, 2006, Petitioner filed the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Doc. No. 1. Respondent moved to dismiss on November 13, 2006, arguing that the Petition is barred by the statute of limitations set forth in 28 U.S.C. § 2244(d). Resp't Mem. at 4-5. While Respondent acknowledges that Petitioner is entitled to statutory tolling for the period of time when his state habeas petition was pending before the California Supreme Court, Respondent points out that this does not save the petition from being deemed untimely. Id. at 5-6. With regard to equitable tolling, Respondent maintains that Petitioner's lack of diligence bars any tolling of the limitations period on this basis. Id. at 6-8. For these reasons, Respondent submits that the instant Petition must be dismissed with prejudice. Id. at 9.

Petitioner does not appear to dispute Respondent's calculation of the amount of statutory tolling warranted (see Pet'r Resp. at 3), but argues that he is entitled to equitable tolling of the limitations period. Pet'r Resp. at 1-7. Petitioner explains that he could not file his federal habeas petition on time because he was denied sufficient access to the law library. Id. His library privileges were affected by the fact that the prison has been on either full or modified lockdown almost continuously since May 26, 2004. Id. at 2, Ex. 1-7. Even when he was granted library privileges, Petitioner contends that his access to legal materials remained limited because he had no more than two hours at a time and was required to share a small number of out-of-date, damaged books with up to twenty other inmates. Id. at 2-6. In support of his

1 argument, Petition attaches numerous "Program Status Reports," which
2 are signed by the Facility Captain and Prison Warden and explain the
3 basis for, and extent of, the various lockdowns and "modified
4 programs" at the prison. Id., Exs. 1-7. To the extent the Court
5 finds these documents insufficient to justify equitable tolling,
6 Petitioner requests an evidentiary hearing to further illuminate the
7 facts relating to his access issues. Id. at 3, 7.

## SCOPE OF REVIEW

Title 28, United States Code, § 2254(a), sets forth the following scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a) (West 2006).

## DISCUSSION

### A. The AEDPA's Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), effective April 24, 1996, imposes a one-year statute of limitations on petitions for writ of habeas corpus filed by state prisoners. 28 U.S.C. § 2244(d) (West Supp. 2006). Section 2244(d)'s one-year limitations period applies to all habeas petitions filed by persons in "custody pursuant to the judgment of a State court." Id. The one-year limitations period runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of

        the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

        (C)  the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

        (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)-(D).

Only section 2244(d)(1)(A) applies in this case. While section 2244(d)(1)(A) provides no definition of "final by the conclusion of direct review," the Supreme Court has explained that "final" means "a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." <u>Griffith v. Kentucky</u>, 479 U.S. 314, 321 n.6 (1987) (citing <u>United States v. Johnson</u>, 457 U.S. 537, 542 n.8 (1982)). Moreover, in the Ninth Circuit, it is well established that "direct review" includes the ninety-day period within which a habeas petitioner can file a petition for writ of certiorari from the Supreme Court, whether or not that petitioner in fact files such a petition. <u>See</u> <u>Bowen v. Roe</u>, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

In this case, the California Supreme Court denied Petitioner's petition for review on direct appeal on May 12, 2004. Lodgment 2. Petitioner's conviction, therefore, became final on August 10, 2004, or upon the expiration of the allotted ninety-day period in which Petitioner could have sought certiorari. <u>See</u> <u>Bowen</u>, 188 F.3d at 1158-59. Thus, the statute of limitations period commenced on August 11, 2004, and expired one year later on August

11, 2005. Petitioner, however, delayed filing his federal petition until July 3, 2006, 326 days after the limitations period had expired. Consequently, absent tolling, the instant petition is untimely and barred by the statute of limitations.

**B.      Tolling of the AEDPA's Limitations Period**

      **1.      Statutory Tolling**

The AEDPA tolls its one-year limitations period for the "time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999). In Carey v. Saffold, 536 U.S. 214 (2002), the Supreme Court further instructed that the time an application for state post-conviction review is "pending" includes the interval between the lower state court's adverse decision and the petitioner's filing of a notice of appeal in the higher state court, provided that the filing of that notice is timely under state law. See Saffold, 536 U.S. at 222-26; see also Evans v. Chavis, 546 U.S. 189, __, 126 S.Ct. 846, 852-53 (2006) (reiterating Saffold, and clarifying that absent guidance from state courts, federal courts must independently examine the delay in each case and determine what the state courts would have held with respect to timeliness). The statute of limitations is not tolled, however, "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed." Nino, 183 F.3d at 1006. Similarly, the limitations period is not tolled after state post-conviction proceedings are final and before federal habeas proceedings are initiated. See 28 U.S.C. § 2244(d)(2).

      As set forth above, the statute of limitations began to run

on August 11, 2004, and expired on August 11, 2005. Petitioner filed a habeas petition seeking review by the California Supreme Court on September 7, 2004, twenty-seven days into the AEDPA limitations period. In the Ninth Circuit, the "AEDPA's period of limitation is tolled during the pendency of a state application challenging the pertinent judgment, even if the particular application does not include a claim later asserted in the federal habeas petition." Tillema v. Long, 253 F.3d 494, 502 (9th Cir. 2001); see also Gaston v. Palmer, 417 F.3d 1030, 1040 (9th Cir. 2005) citing Artuz v. Bennett, 531 U.S. 4, 8-10 (2000) (underlining that "the relevant question for § 2244(d)(2) tolling purposes is whether a properly filed application is pending in state court, and not whether any particular claim was contained in that application"). In this case, the four claims Petitioner asserts in his federal Petition appear to be functionally identical to four of the six claims Petitioner raised in his state habeas petition and both sets of claims challenge the pertinent judgment. Accordingly, this Court finds that the pendency of Petitioner's state habeas petition triggered the AEDPA's statutory tolling provision, and tolled the one-year limitations period beginning on September 7, 2004. 28 U.S.C. § 2244(d)(2). This Court also finds that the limitations period remained tolled until July 27, 2005, the date on which the California Supreme Court denied Petitioner's state habeas petition.

Even considering this period of statutory tolling, the Petition still is untimely. As noted previously, twenty-seven days ran on the statutory clock from the date Petitioner's conviction became final (August 10, 2004) to the day Petitioner filed

(presuming the benefit of the mailbox rule) his state habeas petition (September 7, 2004). The statutory clock began to run again when the California Supreme Court denied Petitioner's habeas petition on July 27, 2005, and 340 days elapsed before Petitioner filed his federal habeas petition on July 3, 2006. Combining the 27 and 340 day periods reveals that 367 non-statutorily tolled days passed after Petitioner's state judgment became final and before his federal habeas petition was filed. Thus, the limitations period expired two days prior to Petitioner's filing, and absent equitable tolling, the Petition is untimely.

**2. Equitable Tolling**

In the Ninth Circuit, the AEDPA's one-year statute of limitations is subject to equitable tolling.[4] See Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds by, Calderon v. United States Dist. Court (Kelly), 163 F.3d 530, 540 (9th Cir. 1998). While equitable tolling is "unavailable in most cases," Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999), it is appropriate where a habeas petitioner demonstrates two specific elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "[T]he threshold necessary to trigger equitable tolling [under the AEDPA] is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 2002) (citation omitted). Petitioners face such a high bar in order to effectuate the "AEDPA's

---

[4] The Supreme Court has "never squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of limitations." Pace v. DiGuglielmo, 544 U.S. 408, 418 n.8 (2005) (assuming without deciding that equitable tolling applies to the AEDPA's limitations period).

statutory purpose of encouraging prompt filings in federal court in order to protect the federal system from being forced to hear stale claims." Guillory v. Roe, 329 F.3d 1015, 1018 (9th Cir. 2003) (citing Saffold, 536 U.S. at 226). As a result, when assessing a habeas petitioner's argument in favor of equitable tolling, courts must conduct a "highly fact-dependent" inquiry. Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc); Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002).

Respondent argues that Petitioner is not entitled to the benefit of equitable tolling. Equitable tolling is unavailable where the failure to timely file a claim is attributed to the petitioner's lack of diligence. Resp't Mem. at 8 (citing Miles, 187 F.3d at 1107). Diligence may be measured by how quickly a petitioner pursued state as well as federal remedies. Id. (citing Guillory, 329 F.3d at 1018). Here, Respondent contends that Petitioner was not diligent in filing either his state or federal habeas petition. Id. Additionally, Respondent notes that the fact that Petitioner only missed the federal filing deadline by two days does not warrant application of equitable tolling. Id. (citing cases from several circuits).

Petitioner counters that he is entitled to the benefit of equitable tolling or, at the very least, an evidentiary hearing to further develop the evidence supporting his equitable tolling argument. Pet'r Resp. at 1-7. He offers the following grounds in support of his argument that equitable tolling is warranted in this case: (1) the prison has been on perpetual lockdown or a modified lockdown program since May 2004 (and remained on modified lockdown as of December 2006), (2) even where the modified lockdown program

allowed for some law library access, he was given only two hours and had to share the limited number of books with up to twenty other inmates (which sometimes resulted in a total denial of access), (3) in reality, the inmates receive significantly less than the full two hours allotted for library access during lockdown or modified lockdown because the two hours includes the time used to conduct mandatory strip searches and cell searches and to apply restraints (handcuffs, etc.), (4) the books in the library are outdated and damaged and only two provide the information "needed to prepare a document" (and again, these two must be shared with a dozen or more other inmates), (5) even when the prison plan of operation forms (attached to Petitioner's response brief) listed law library access as normal (during modified lockdown), African-American inmates "did not see much law library [time],"[5] (6) after a peace officer was battered on July 30, 2005, and the prison again modified the lockdown program, Petitioner was not scheduled for library time for weeks at a time even though he signed up, (7) Petitioner often would not receive "prior warning ducat pass (CDC 129) per CCR Title 15 § 3014," which meant that Petitioner "would be given (2) minute to (8) minute warnings to prepare for access to law library then when [he] asked officers to escort [him] to law library, [he] was denied access," (8) Petitioner has filed appeals (CDC 602 form) pertaining to these denials of access, (9) he has filed inmate request for interview forms (GA-22 (9/22)) seeking status reports as to his requests for exhibit documentation to prove his equitable tolling claim (and has requested the same from correctional officers), but

---

[5] Based on several references in Petitioner's response brief to the amount of library access afforded to African-American inmates, the Court presumes that Petitioner is African-American.

has been denied[6], and (10) his facility (yard A) shares a law library with another yard, thereby increasing the number of prisoners utilizing the same books. Id. at 2-6. Petitioner further notes that he would have filed his state habeas petition sooner, but was prevented from doing so because twelve days after the California Supreme Court denied his petition for direct review (May 12, 2004), the prison was put on lockdown. Id. at 2. In light of the foregoing, Petitioner submits that equitable tolling is warranted because he has pursued his case diligently whenever he has had access to legal research materials. Id. at 4-5.

Under Pace, the Court must first consider whether or not Petitioner diligently pursued his rights. See Pace, 544 U.S. at 418. As the Ninth Circuit recently noted, "our precedents do not provide us much guidance regarding what diligence might mean in the AEDPA context." Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006). Under the facts presented by Roy v. Lampert, the Ninth Circuit found that the prisoners presented sufficient evidence of their diligence

---

[6]  Petitioner concedes that he did receive status reports for the month of May in response to his requests. Pet'r Resp. at 5. However, he cites these reports as being attached as "Exhibit[s] 13 and 14." Id. In fact, there are only seven exhibits attached to Petitioner's response brief. See Doc. No. 17. Additionally, Petitioner asserts that he has "appealed this institution's procedure concerning law library only to be retaliated against." Pet'r Resp. at 5. Again, Petitioner cites to missing exhibits in support of this argument (Exhibits 15 and 16). See Doc. No. 17. The fate of these missing exhibits is unknown. For purposes of deciding this motion to dismiss and because Petitioner is proceeding *pro se*, the Court accepts Petitioner's representation that he filed appeals (using CDC 602 forms) and inmate requests for interviews related to his library access issues. See Roy v. Lampert, 465 F.3d 964, 970 (9th Cir. 2006) ("we also here reaffirm the clear principle that, even though *pro se* status alone is not enough to warrant equitable tolling, it informs and colors the lens through which we view the filings, and whether these filings made sufficient allegations of diligence").

"[b]ecause both Roy and Kephart filed their habeas petitions *pro se*, allege[d] specific efforts they pursued in order to file habeas petitions, and because both filed their claims within a reasonable period of time after they were transferred back to the Oregon facility and the extraordinary circumstances were removed." Id.

      Similarly, Petitioner is proceeding *pro se* and alleges that he filed appeals and requests for interviews in an effort to remedy his lack of library access. Even though he was required to work under continuous modified lockdown conditions, Petitioner only missed the statutory deadline by two days. This suggests that he worked diligently to complete his Petition, despite significant obstacles.[7] This suggestion is buttressed by the facts that Petitioner repeatedly challenged his restricted law library access and that he apparently only had shared access to limited and out-of-date legal books. Pet'r Resp. at 3; see Roy, 465 F.3d at 971 (distinguishing case where inmate made no showing that he was even aware of contents of law library in finding inmate Kephart was diligent because "Kephart stated with specificity that the Arizona library 'consisted of only three outdated legal books, which contained no information about AEDPA'"). Accordingly, given the specific facts of this case, the Court finds that Petitioner has diligently pursued his rights.

      The next issue is whether "extraordinary circumstances" prevented Petitioner from filing his Petition in a timely manner. See Pace, 544 U.S. at 418. Petitioner argues that the requisite

---

[7] The Court notes the likely difficulties Petitioner encountered trying to craft coherent legal arguments when only permitted sporadic, short, communal visits to a law library, which only had a limited number of out-of-date books.

extraordinary circumstances exist because his access to legal authority was denied or severely limited due to the fact that the prison was in a lockdown or modified-lockdown state for almost the entire limitations period.  Neither the United States Supreme Court nor the Ninth Circuit have ruled directly on whether prison lockdowns constitute "extraordinary circumstances."  However a few relevant decisions have been issued by district courts within this circuit.  In <u>Hood v. Galaza</u>, 47 F. Supp. 2d 1144 (S.D. Cal. 1999), the court found that the petitioner's generalized, nonspecific allegations "that he experienced delays in photocopying materials and utilizing the prison law library services" did not constitute "extraordinary circumstances."  <u>Hood v. Galaza</u>, 47 F. Supp. 2d 1144, 1148 (S.D. Cal. 1999) (Huff, J.).  Likewise, in a case frequently cited on this issue, <u>U.S. v. Van Poyck</u>, 980 F. Supp. 1108 (C.D. Cal. 1997), the Central District of California rejected the prisoner's argument that the statute should be equitably tolled because the security lockdowns only prevented the defendant from accessing the law library for <u>two weeks</u>.  <u>U.S. v. Van Poyck</u>, 980 F. Supp. 1108, 1111 (C.D. Cal. 1997).  The district judge explained that two weeks "could hardly be characterized as an 'extraordinary circumstance'" because the defendant "still had fifty other weeks to prepare a § 2255 motion [habeas petition challenging federal conviction] in his prison's library facilities."  <u>Id.</u>

In contrast, in the instant case, Petitioner provided the Court with substantial evidence, in the form of prison "Program Status Reports," documenting the exact duration of each lockdown or modified program.  <u>See</u> Pet'r Resp., Exs. 1-7.  These reports also detail the limitations on the number and race of prisoners allowed

into the law library as well as the duration and frequency of said visits. Id. Furthermore, these reports demonstrate that Calipatria state prison was under continuous modified lockdown conditions from June 9, 2005 until at least October 13, 2006 - thereby nearly covering the entire one-year statutory limitations period. Id. Accordingly, this Court finds that in Petitioner's case, the duration and characteristics of the lockdowns at Calipatria prison constitute "extraordinary circumstances."

Finally, the Court must determine whether the alleged "extraordinary circumstances" (i.e. the prison lockdowns) "were the but-for and proximate cause of [Petitioner's] untimeliness." Allen v. Lewis, 255 F.3d 798, 800 (9th Cir. 2001) (adopting standard used by Second and Tenth Circuits). Reviewing the statutory limitations period chronologically, the Court finds that no equitable tolling is warranted for the initial twenty-seven day period between when Petitioner's conviction became final (August 10, 2004) and when he filed his state habeas petition (September 7, 2004) because no lockdown, modified program, or other interference with library access is alleged for that time period. On the other hand, from July 27, 2005, when the California Supreme Court denied his habeas petition and the statutory clock resumed running, until approximately July 1, 2006, Petitioner's access to the law library was severely restricted. See generally Pet'r Resp., Exs. 3-4. While the Court does not find that the lockdowns and associated restrictions were so onerous that the entire period should be tolled, the Court does find that the restrictive nature of the lockdowns, the multi-month duration of the lockdowns, and Petitioner's diligence in challenging his chronic inability to gain

1   meaningful library access warrants equitable tolling for at least 3
2   days of this period.[8]  As such, the Court finds that the library
3   access restrictions "were the but-for and proximate cause of
4   [Petitioner's] untimeliness" for at least three days, see Allen,
5   255 F.3d at 800, and therefore, holds that the AEDPA limitations is
6   tolled for at least three days.
7       For the reasons set forth above, this Court finds that
8   Petitioner diligently pursued his rights but that the perpetual
9   modified lockdown programs at the prison presented extraordinary
10  circumstances which prevented Petitioner from filing his federal
11  Petition in a timely manner.  See Pace, 544 U.S. at 418.
12  Accordingly, this Court finds that the AEPDA limitations period is
13  equitably tolled for three days during the period Calipatria State
14  Prison was under a prolonged period of modified lockdown and
15  Petitioner was granted minimal access to the law library (July 27,
16  2005 to July 1, 2006).  With this additional period of equitable
17  tolling, Petitioner's federal petition is timely.
18      This Court therefore **RECOMMENDS** that Respondent's Motion to
19  Dismiss Petition for Writ of Habeas Corpus be **DENIED**.
20      **3.   Evidentiary Hearing**
21      To the extent the Court finds his evidence of the modified
22  program conditions insufficient to support equitable tolling,

---

[8] Respondent argues that the fact that Petitioner only missed the statutory filing deadline by two days does not, in and of itself, justify equitable tolling. Resp't Mem. at 8. Respondent cites only to cases from other circuits in support of this contention. Id. However, even presuming the Ninth Circuit adopts this view, it is immaterial to the Court's resolution of this issue because the Court finds that the restrictions on library access caused by the modified lockdown program, coupled with Petitioner's diligence, justify the limited equitable tolling (i.e. the Court's determination is not premised solely on the fact that this case presented a near-miss scenario).

Petitioner requests that the Court hold an evidentiary hearing to allow him to further illuminate the facts supporting his equitable tolling argument. Pet'r Resp. at 3, 7. An evidentiary hearing may be appropriate where a significant conflict exists between the affidavits submitted on the issue. See Roy, 465 F.3d at 975 (remanding for evidentiary hearing where many conflicts existed on many issues among the affidavits); Laws v. Lamarque, 351 F.3d 919, 921, 924 (9th Cir. 2003) (where record "patently inadequate," court remanded for further factual development because petitioner "made a good-faith allegation that would, if true, entitle him to equitable tolling"); Buffalo v. Sunn, 854 F.2d 1158, 1165 (9th Cir. 1988) (holding that "[i]n a habeas case, when there are only conflicting affidavits regarding the facts underlying the issue of cause, the district court must hold an evidentiary hearing"). Here, Respondent did not file any evidence disputing or contradicting Petitioner's evidence and this Court finds that the Program Status Reports filed by Petitioner present sufficient evidence to justify limited equitable tolling during the modified lockdown period. Accordingly, this Court finds that an evidentiary hearing is unnecessary in this case.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) denying Respondent's Motion to Dismiss; and (3) ordering Respondent to file an answer to the Petition.

**IT IS ORDERED** that no later than **March 2, 2007** any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections

1 | to Report and Recommendation."

2 | **IT IS FURTHER ORDERED** that any reply to the objections shall
3 | be filed with the Court and served on all parties no later than
4 | **March 23, 2007**.  The parties are advised that failure to file
5 | objections within the specified time may waive the right to raise
6 | those objections on appeal of the Court's order.  See <u>Turner v.
7 | Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

8 | **IT IS SO ORDERED.**

9 | DATED:   February 9, 2007

10 |

11 | BARBARA L. MAJOR
      United States Magistrate Judge
12 |

17 | COPY TO:

18 | HONORABLE IRMA E. GONZALEZ
19 | UNITED STATES DISTRICT JUDGE

20 | ALL COUNSEL AND PARTIES